**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NATIONAL MEDICAL CARE, INC. d/b/a  )
NEOMEDICA LOOP/EAST DELAWARE,  )
         )
        Plaintiff,  )
         )
v.  )
         )
ASTA CARE CENTER OF ELGIN, LLC.  )
         )
        Defendant.  )
         )

```
FILED: JULY 23, 2008
08CV4190
JUDGE CASTILLO
MAGISTRATE JUDGE COX
EDA
```

## COMPLAINT

    Plaintiff, National Medical Care, Inc., d/b/a Neomedica Loop/East Delaware ("NMC"),

by undersigned counsel, complains against Defendant Asta Care Center of Elgin, LLC ("Asta")

as follows:

### PARTIES AND VENUE

    1.    Plaintiff NMC is incorporated in the state of Delaware with its principal place of

business at 920 Winter Street, Waltham, Massachusetts, 02451.

    2.    Defendant Asta is a limited liability company with its principal place of

business at 134 North McLean Boulevard, Elgin, Illinois 60123.  Upon information and belief,

none of the members of Asta are citizens of either Delaware or Massachusetts.

    3.    Jurisdiction of this Court arises under 28 U.S.C. § 1332 because the parties are

citizens of different states and the amount in controversy exceeds $75,000.

    4.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2).

## COUNT I
## BREACH OF CONTRACT

5.        NMC is in the business of providing, among other things, dialysis treatment at outpatient dialysis centers as well as home hemodialysis training and support to patients with End Stage Renal Disease ("ESRD").  NMC established a dialysis treatment facility at One East Delaware, Chicago, Illinois 60611 (the "ESRD Dialysis Unit").[1]

6.        Asta is a Long Term Care ("LTC") facility.

7.        Treatment protocols for dialysis patients with ESRD are regulated by State and Federal government agencies.  The U.S. Department of Health and Human Services Center for Medicare and Medicaid Services ("CMS") publishes guidelines that apply to all Medicare and Medicaid patients.  The guidelines are considered authoritative in the industry.

8.        CMS permits patients to perform home dialysis with little or no professional assistance if the ESRD patient has been trained to perform self-dialysis.  Because the LTC facility is considered as the patient's home, CMS permits the provision of home dialysis training and support in the LTC facility setting.  CMS allows LTC facility to provide home dialysis to patients if they coordinate with an ESRD facility to provide the training and support necessary.

9.        CMS requires that the Medicare-approved ESRD facility be responsible for all aspects of the home dialysis care performed in the LTC facility.  CMS obligates the approved ESRD facility to monitor the dialysis care of LTC facility residents and investigate the care provided.  For example, the ESRD facility must ensure compliance with federal regulations in the areas of Infection Control, Water Treatment, Equipment Installation and Maintenance, Staffing, Staff Training, and Patient Monitoring During Treatment.

---

[1] The One East Delaware facility has since relocated to 557 West Polk, Chicago, Illinois, 60607

C048860/0176598/79965.1

10.     Under 42 CFR § 405.2136(b)-(e), CMS requires that the ESRD facility and the LTC facility enter into a written coordination agreement to coordinate the provision of such specific services to maximize patient safety and program efficiency.

11.     In September 2003, Asta and NMC entered into an SNF/LTCF Dialysis Services Agreement ("Agreement") in compliance with federal regulations. *See* Agreement, Exhibit 1.

12.     Under this Agreement, NMC agreed to provide an educational training program to train Asta staff to perform dialysis for ESRD patients at Asta. *Id.* The Agreement further provided that services were to be provided by qualified clinical personnel. *Id.* NMC's clinical personnel were not responsible for providing any medical treatment or procedures to patients at Asta. *Id.*

13.     In exchange, Asta agreed to provide the ESRD Dialysis Unit with space sufficient and suitable for the administration of the services. *Id.* Asta further agreed to provide all of the necessary supplies, equipment, and utilities. *Id.* Asta was required to pay NMC for each staff member trained per session without a patient. *See* Agreement, Schedule B. Asta staff members assisted patients with dialysis treatments using dialysis machines and other equipment owned and/or leased by NMC.

14.     The Agreement states "[n]otwithstanding anything herein to the contrary, [NMC] and the ESRD Dialysis Unit reserve the right to immediately discontinue the provision of dialysis services to any resident of the Nursing Facility who, in their sole discretion, does not observe the established responsibilities, policies and procedures of the ESRD Dialysis Unit." *See* Agreement, § 2.

3

15.     The Agreement also permits either party to terminate it, at any time, with or without cause, upon thirty (30) days written notice to the non-terminating party.  *See* Agreement, § 9.

16.     During regulatory audits and education assessments in May 2008, NMC became aware of multiple serious issues that raise quality of care concerns, including, but not limited to, gaps in Water Quality Documentation, Medication Management, and Infection Control Practices. NMC undertook substantial efforts to work with Asta to address these issues, including efforts to train and retrain Asta staff and to otherwise assist Asta to try to improve the quality of Asta's services.

17.     Despite NMC's efforts, the quality concerns were not adequately addressed by Asta, and Asta staff members providing caregiver services to the home dialysis patients continually failed to comply with NMC's policies and federal regulations governing home dialysis care.

18.     On July 8, 2008, NMC personnel, including Regional Vice President Marilyn Duncan and Area Manager Catherine Columbo, met with David Meiselman, the Administrator of Asta to discuss NMC's grave concerns about the quality of care received by NMC's home dialysis patients residing at Asta.

19.     NMC concluded that Asta had failed to take NMC's concerns seriously and had failed to act in a prompt and appropriate manner to resolve these issues.

20.     On July 18, 2008, NMC notified Asta that it was suspending Asta's participation in NMC's home training and support program.  *See* July 18, 2008 Letter, Exhibit 2. NMC explained that it had arranged for the ESRD patients residing at Asta to receive their dialysis treatments at an outpatient facility as of July 23, 2008.  *Id*.  NMC notified Asta of its

4

intention to remove its dialysis equipment from Asta's premises on July 21, 2008. *Id*. The price of the 13 dialysis machines in Asta's possession is in excess of $75,000. *Id*. NMC further stated that the suspension must remain in place until NMC receives a clear indication that Asta has taken steps to address and fully resolve NMC's concerns and ensure quality dialysis care in compliance with federal standards. *Id*.

21.    In the July 18, 2008 Letter, NMC further stated that the letter shall serve as written notice that NMC was exercising its rights pursuant to Section 9 of the Agreement to terminate the Agreement effective 30 days from Asta's receipt of the notice. *Id*.

22.    Asta responded via letter dated July 21, 2008, and confirmed receipt of the July 18, 2008 Letter. *See* July 21, 2008 Letter, Exhibit 3. Asta stated its belief that NMC did not have the right to remove dialysis equipment prior to the end of the 30 day notice period and that NMC was effectively shutting down its dialysis program with no notice. *Id*.

23.    On July 22, 2008, NMC responded to Asta by letter sent via facsimile, and conformed that, pursuant to Section 2 of the Agreement, it had the right to immediately discontinue the provision of dialysis services to any resident of the Nursing Facility who, in their sole discretion, does not observe the established responsibilities, policies, and procedures of the ESRD Dialysis Unit. *See* July 22, 2008 Letter, Exhibit 4. NMC communicated its position that Asta staff providing caregiver services to ESRD patients were not observing the established responsibilities, policies, and procedures of the ESRD Dialysis Unit when assisting residents in the provision of dialysis services, entitling NMC to immediately discontinue the provision of dialysis services to residents at Asta. *Id*.

24.    Asta is not a licensed ESRD facility and is prohibited from providing dialysis services without the involvement of a licensed ESRD dialysis provider. NMC informed Asta

that under no circumstances was Asta permitted to utilize any dialysis equipment or supplies owned or supplied by NMC to perform dialysis services. *Id.*

25.     Finally, NMC requested that Asta contact it immediately to arrange for the transfer of patient medical records to the outpatient facilities where NMC had arranged for Asta's ESRD residents to receive dialysis services beginning July 23, 2008. *Id.*

26.     Asta did not respond to the July 23, 2008 letter.  On July 23, 2008, NMC learned that Asta had provided dialysis services to ESRD residents despite NMC's suspension of the Agreement and NMC's clear directive to the contrary.  Accordingly, Asta has breached the Agreement.

27.     Until July 21, 2008, dialysis services provided to ESRD residents at Asta were billed using NMC's provider number.

28.     The next dialysis treatment is scheduled on Friday, July 25, 2008.  Asta's continuing provision of dialysis services to ESRD patients despite the suspension of the Agreement and in contravention of federal regulations poses a grave danger to the health and safety of the patients.    Specifically, the observed shortcomings subject patients to immediate risk of severe harm, including cardiac arrest and other life threatening complications up to and including death.

29.     Additionally, the continued provision of unlicensed ESRD dialysis services by Asta subjects NMC to potential civil liability to patients, damage to NMC's reputation in the industry, and the resultant loss of customers.

30.     Moreover, the failure to return NMC's dialysis machines constitutes a breach of the Agreement.

C048860/0176598/79965.1

WHEREFORE, NMC prays that the Court:

A.      enter a judgment in its favor and against Asta on NMC's Breach of Contract claim,

B.      enjoin Asta, its employees, agents, and affiliates from providing ESRD dialysis services using NMC's equipment or otherwise violating the Agreement and/or State and Federal laws and regulations,

C.      enjoin Asta from using in any manner any equipment owned, leased, or provided by NMC,

D.      order the return all equipment and supplies owned, leased, or provided by NMC immediately,

E.      enter a declaratory judgment terminating the Agreement effective August 20, 2008,

F.      and provide such other relief the Court deems just and proper.

Dated:  July 23, 2008                    Respectfully submitted,

                                         NATIONAL MEDICAL CARE, INC.


                                         By: _____/s/ Jena Valdetero_____
                                                One of Its Attorneys


Brian A. Sher, #6196469
Anthony L. Lehr, #6187689
R. Bruce Duffield, #0686360
Jena M. Valdetero, #6290948
BRYAN CAVE LLP
161 North Clark Street, Suite 4300
Chicago, Illinois  60601
Telephone:  (312) 602-5000
Facsimile:  (312) 602-5050

C048860/0176598/79965.1

## SNF/LTCF
## DIALYSIS SERVICES AGREEMENT

This Agreement is made by and between Asta Care Center of Elgin (hereinafter referred to as the "Owner") and National Medical Care, Inc., d/b/a Neomedica Loop/East Delaware, (hereinafter referred to as the "Company").

### RECITALS:

WHEREAS, Owner owns and operates a Nursing Home, located at 134 North McLean Boulevard, Elgin, Illinois 60123 (the "Nursing Facility"); and

WHEREAS, the Company has established a dialysis treatment facility at One East Delaware in Chicago, Illinois, 60611 (the "ESRD Dialysis Unit"); and

WHEREAS, the Company is experienced and qualified to train and support home dialysis patients, and provide training to the staff of the Nursing Facility; and

WHEREAS, the Nursing Facility desires to enter into an arrangement for the purpose of complying with the provisions of 42 C.F.R. §483.75(h), under which the Company shall provide certain dialysis services to the Nursing Facility's residents

WHEREAS, the ESRD Dialysis Unit is a certified home dialysis training facility; and

WHEREAS, the Nursing Facility desires to enter into an arrangement for the purpose of arranging for the dialysis care of the Nursing Facility's residents.

NOW THEREFORE, the Nursing Facility and the Company agree as follows:

1. <u>Resident Information</u>.    The Nursing Facility shall ensure that all appropriate medical and administrative information accompany all residents at the time of transfer or referral to the ESRD Dialysis Unit.  This information, shall include, but is not limited to, where appropriate, the following:

1



A.   Resident's name, address, date of birth and Social Security Number;

B.   Name, address and telephone number of the resident's next of kin;

C.   Resident's third party Payor data;

D.   Appropriate medical records, including history of the resident's illness, including laboratory and x-ray findings;

E.   Treatment presently being provided to the resident, including medications;

F.   Name, address and telephone number of the nephrologist with admitting privileges at the ESRD Dialysis Unit referring the resident to the ESRD Dialysis Unit; and

G.   Any advance directive executed by the resident.

H.   Prescription for treatment

2.   <u>Written Protocol</u>.  The parties will mutually develop a written proposal governing specific responsibilities, policies and procedures to be used in rendering dialysis services to residents at the ESRD Dialysis Unit, including but not limited to, the development and implementation of a resident's care plan relative to the provision of dialysis services.  The Nursing Facility will provide for the interchange of information useful or necessary for the care of the resident and will inform the ESRD Dialysis Unit of a contact person at the Nursing Facility whose responsibilities include oversight of provision of dialysis services by the Company and the ESRD Dialysis Unit to the residents of the Nursing Facility.  Notwithstanding anything herein to the contrary, the Company and the ESRD Dialysis Unit reserve the right to immediately discontinue the provision of dialysis services to any resident of the Nursing Facility who, in their sole discretion, does not observe the established responsibilities, policies and procedures of the ESRD Dialysis Unit.  If the services are provided on site of the Nursing Facility.  The ESRD Dialysis Unit will comply with the Nursing Facilities Infection Control policies.

3.   <u>Specific Services Provided by the Parties</u>.

c.   The ESRD Dialysis Unit will provide an educational training program to train Nursing Facility staff to perform dialysis for patients of the Nursing Facility.  Services shall be provided by qualified clinical personnel.  A copy of the training protocol is attached as Schedule A.

The ESRD Dialysis Unit and Nursing Facility shall jointly and mutually develop a written protocol governing specific training schedules.  Except as is necessary and related to the training of staff hereunder, the ESRD Dialysis Unit's clinical personnel shall not be

2

responsible for providing any medical treatment or procedures to patients of the Nursing Facility.

The ESRD Dialysis Unit shall make available a manager, on a part-time basis, to perform such administrative functions as are necessary and related to the provision of the services at the Nursing Facility. The responsibilities of the manager will include, but not be limited to, the scheduling of treatments, overseeing the clinical personnel and providing competency documentation for clinical staff scheduled at the Nursing Facility.

The Nursing Facility will provide the ESRD Dialysis Unit with space sufficient and suitable for the administration of the services. The Nursing Facility will provide all of the necessary supplies, equipment, utilities, including electricity, heating/air conditioning and water. While on duty at the Nursing Facility, ESRD Dialysis Unit personnel shall be permitted to utilize the restroom, cafeteria facilities, and other public facilities and services available to employees of the Nursing Facility.

For services rendered by ESRD Dialysis Unit hereunder, the Nursing Facility will pay ESRD Dialysis Unit in accordance with the attached Schedule B. For Staff members who do not complete the training, the fee will be prorated

Nursing Facility agrees to pay all charges within thirty (30) days of receipt of an invoice from ESRD Dialysis Unit. If Nursing Facility fails to pay all amounts when due, ESRD Dialysis Unit shall have the right to terminate this Agreement upon written notice to Nursing Facility. The right to terminate shall be cumulative with and not exclusive of any rights that ESRD Dialysis Unit may have under this Agreement and applicable law. Notwithstanding any termination of this Agreement, interest will accrue on all past due balances in an amount equal to the lesser of (a) 1% per month or part thereof during which such payments remain unpaid, or (b) the maximum rate allowed by applicable law. Payment of the invoice shall be the sole obligation of the Nursing Facility and shall not be contingent in any way upon the Nursing Facility's collections from its patients or from third party payers. Nursing Facility shall be liable to ESRD Dialysis Unit for all costs, including, but not limited to, attorneys' fees and court costs, incurred by ESRD Dialysis Unit in the collection of amounts due under this Agreement.

The fees set forth on Schedule B shall increase annually on each anniversary date of this Agreement, by the greater of __3__ % or the percentage increase in the Consumer Price Index for All Urban Consumers (United States City Average) ("Index"), as published by the United States Department of Labor, Bureau of Labor Statistics for the prior year.

4. <u>Insurance</u>. The Company shall maintain for the ESRD Dialysis Unit and the Nursing Facility shall each maintain in full force and effect or arrange to provide throughout the term of this Agreement, at its own expense:

    A. Comprehensive General Liability Insurance, including but not limited to contractual liability on a blanket basis or contractual liability specifically covering this Agreement, contractors protective liability, products liability, coverage in an amount not less than $1,000,000 each occurrence and $3,000,000 aggregate for injury to persons.

    B. Professional Liability Insurance with coverage in an amount not less than $1,000,000 each occurrence and $3,000,000 aggregate.

    C. Workers Compensation Insurance as required by statute.

Each party will provide the other with a certificate evidencing said insurance, if, and, as requested. Each party's policy shall name the other as an additional insured. All certificates of insurance provided pursuant to this section will provide that the insurer will notify the additional insured, in writing, prior to any termination of the policy or coverage or any material alterations in the policy or coverage, which alteration change, restrict or reduce the coverage provided. In the event that an insurer refuses to so notify the additional insured, it will be the responsibility of each party to notify the other upon receipt or notification of such material alteration.

5. <u>Hold Harmless</u>. The Company and the Nursing Facility are both independent contractors and not partners or joint ventures with each other. Nothing in this Agreement shall be construed as authorizing or appointing either party or any of its agents, representatives, or employees to represent the other in any matter. The Company and the Nursing Facility agree to indemnify and hold each other harmless (including the other's Board of Directors, individually and collectively, and the other's officers, shareholders, employees, agents, and other representatives, individually and collectively,) from and against all claims, liabilities, damages, costs and expenses, including, without limitation, reasonable attorneys' fees, based upon or arising from, or in any manner relating to their negligence in rendering services under this Agreement. This includes the negligence or allegations of negligence of the Nursing Facility and the Company, their agents, representatives, or employees. The Company and the Nursing Facility agree to indemnify and hold each other harmless (including the other's Board of Directors, individually and collectively, and the other's officers, shareholders, employees, agents, and other representatives, individually and collectively,) from and against all claims, liabilities, damages, costs and expenses, including, without limitation, reasonable attorneys' fees, based upon or arising from, or in any manner related to the others breach of any of the terms and conditions of this Agreement. The party seeking indemnification shall promptly notify the other party in writing of any claim, lawsuit, or demand for payment asserted against it for which indemnification is sought, and shall promptly deliver to the other party a true copy of any document or material of any kind that asserts such claim. The party seeking indemnification, its agents, representatives, and employees shall cooperate fully will the other party at all times during the pendency of the claim

4

or lawsuit. Failure by the party seeking indemnification to comply with the above terms shall nullify the other party's duties under this section.

When the indemnifying party accepts its indemnification obligation, it reserves the right to control the investigation, trial, and defense of such lawsuit or action (including all settlement negotiations) any appeal involved, and the choice of any attorneys do be engaged. The party seeking indemnification may, at its own cost, participate in the investigation, trial, defense, and appeal of such lawsuit or action.

6. <u>Entire Agreement</u>. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all negotiations, prior discussions, agreements or understandings, whether written or oral. No amendment to this Agreement or its attachments are effective or binding on either party unless agreed to in writing signed by both parties.

7. <u>Waiver of Breach</u>. One party's waiver, expressed or implied, of any default by the other party of any provision of this Agreement is not a waiver of any other default. A party's waiver of any default shall not affect the right of that party to require performance of the defaulted provision at any future time.

8. <u>Successors and Assigns</u>. Neither party shall assign this Agreement in whole or in part without the written consent of the other which shall not be unreasonably withheld. Neither party shall assign any monies, obligations, or entitlements due or to become due to it under this Agreement without the prior written consent of the other party. This Agreement shall be binding upon and inure to the benefit of the successors, permitted assigns, heirs, and representatives of the Nursing Facility and the Company. Any attempted assignment of this Agreement in violation of the provisions of this section is void.

9. <u>Term; Early Termination</u>. The term of this Agreement is for one (1) year, beginning on September 15, 2003 and will automatically renew for successive one year periods unless either party gives the other notice prior to an expiration date. Either party may terminate this Agreement, at any time, with or without cause, upon thirty (30) days written notice to the non-terminating party. If terminated without cause, the parties shall not enter into any agreement or arrangement with each other for the provision of Services on substantially similar terms to those contained herein to be provided within a period of one (1) year from the initial Effective Date of the Agreement or most recent Amendment. The Company and the ESRD Dialysis Unit shall have no duty to dialyze residents of the Nursing Facility after the effective date of the termination.

10. <u>Access to Books and Records</u>. Until the expiration of four years after the furnishing of the services provided under this Agreement, the Company, will make available to the Secretary, United States Department of Health and Human Services, and the United States Comptroller General, and their representatives, a copy of this Agreement and such books, documents and records of the Company that are

necessary to certify the nature and extent of any cost incurred by Nursing Facility. If the Company carries out the duties of the Agreement through a subcontract worth $10,000.00 or more over a 12-month period with a related organization, the subcontract will also contain an access clause to permit access by the Secretary, Comptroller General, and their representatives to the related organization's books and records. In the event this Agreement is not subject to the provision of Social Security Act section 1861 (v)(1)(I) and 42 C.F.R. section 420.300 or relevant regulations, this section of the Agreement shall be null and void.

11. <u>Notices</u>. All notices pursuant to this Agreement shall be in writing and shall be given by depositing said notices in the United States registered or certified mails, return receipt requested, addressed to the parties hereto at the addresses set forth in this section, or to such other address as may hereafter be specified by any party or parties. All notices given in the manner prescribed in this section shall be deemed properly served upon receipt. Company shall provide Owner with 90 days notice prior to opening a new nursing home dialysis program in Elgin, IL.

Notice to the Company:

Neomedica East Delaware, Inc.
c/o Fresenius Medical Care North America
95 Hayden Avenue
Lexington, MA  02420-9192
Attention:  Law Department

With a copy: (which copy shall not construe notice) to:

Neomedica East Delaware
One East Deleware-5th Floor
Chicago, Il. 60611
Attention:  Administrator

<u>Notice to the Nursing Facility</u>:          **PERSONAL & CONFIDENTIAL**

Asta Care Center of Elgin
134 North McLean Boulevard
Elgin, Illinois 60123

Attention:     Mr. Seth Gillman
               General Counsel

12. <u>Severability</u>. If any of the provisions of this Agreement shall be declared invalid or unenforceable under applicable law, said provisions shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining provisions of the Agreement.

13. <u>Non-Waiver of Breach</u>. The waiver of any breach of any term or condition of this Agreement is not a waiver of any other term or condition of this Agreement.

14. <u>No Personal Liability</u>. No elected official, director, officer, agent or employee of either party shall be charged personally or held contractually liable by or to the other party under any term or provision of this Agreement or because of any breach thereof or because of its or their execution, approval or attempted execution of this Agreement.

15. <u>Headings</u>. The headings of the several Sections of this Agreement are inserted only as a matter of convenience and for reference, and they in no way define, limit or describe the scope or intent of any provision of this Agreement, nor will they be construed to affect, in any manner, the terms and provisions hereof or the interpretation or construction thereof.

The authorized representatives of the parties have signed this Agreement on
_____, 2____.


NURSING FACILITY          NATIONAL MEDICAL CARE, INC.



By: _____   By: _____

## SCHEDULE A

Staff Training Protocol:

1. Nursing Facility will employ a designated staff person for training in hemodialysis
2. RN trainer will train nursing facility employee to the specific machine and needs of the patient in the field
3. RN trainer will train nursing facility employee to company policies and procedures
4. The nursing facility employee will complete and pass with 85%, the final theory exam
5. The nursing facility employee will be evaluated with a home hemodialysis checklist
6. Training with a patient will be provided three times per week for up to twelve weeks or as indicated by level of experience of the care giver
7. Documentation of completion of training will be provided to the Nursing Facility

## SCHEDULE B

Nursing Facility Training Fee

$200.00 per staff member trained per
session without a patient

# Fresenius Medical Care

July 18, 2008

David Meiselman
Administrator
Asta Care of Elgin
134 S. McLean Ave
Elgin, IL 60123

**Via Facsimile and Certified Mail**

Dear Mr. Meiselman:

As per our conversation on July 8, 2008, National Medical Care, Inc. d/b/a Fresenius Medical Care Loop/East Delaware ("FMC") has grave concerns about the quality of care received by its home dialysis patients residing at Asta Care of Elgin. There have been multiple serious issues identified on regulatory audits and educational assessments that raise quality of care concerns, including gaps in Water Quality Documentation, Medication Management, and Infection Control Practices. For the past two months, FMC has attempted to work with Asta Care of Elgin to address these issues, through multiple re-education sessions and re-training of nursing home staff. Despite these efforts, the quality concerns have not been adequately addressed by Asta Care, and the Asta Care staff providing caregiver services to the home dialysis patients continually fails to comply with FMC's policies and federal regulations governing home dialysis care.
Based on our discussions, we feel that Asta Care has failed to take these concerns seriously and act in an appropriately prompt manner to resolve them.

FMC is accountable for the appropriate delivery of dialysis services and ESRD care to its home patients even if the care is delivered outside of the ESRD facility. In light of the severity of the issues noted, lack of any progress in resolving them, and concern for patient safety, FMC must immediately suspend Asta Care's participation in FMC's home training and support program. We have arranged for the ESRD patients residing at Asta Care to receive their dialysis treatments at an outpatient facility as of July 23, 2008. We ask that you take immediate steps to arrange for necessary transportation for the patients to and from the facility. If we can provide any assistance or information to assist with this transition, please contact Carita Walejeski at 312 834-0041. FMC anticipates removing the dialysis equipment from the Asta Care premises the afternoon of Monday July 21. Until FMC receives a clear indication that Asta Care has taken steps to address and fully resolve FMC's concerns and ensure quality dialysis care in compliance with federal standards, this suspension must remain in place.

**EXHIBIT**

tabbies

2

David Meiselman                         -2-                      July 18, 2008

Finally, this letter shall serve as written notice to you that pursuant to Section 9 of the SNF/LTCF Dialysis Services Agreement between National Medical Care, Inc. and Asta Care of Elgin, National Medical Care, Inc. is terminating the Agreement effective 30 days from your receipt of this notice.

Sincerely,

Marilyn Duncan
Regional Vice President


cc:    Seth Gillman, General Counsel, Asta Care Center of Elgin (via certified mail)
       Julie Hawkins, Assistant General Counsel, Fresenius Medical Services

Jul. 21. 2008  6:12PM    ASTA HEATHCARE                   No. 6699   P. 2


# ASTA
Care Center of Elgin

08CV4190
JUDGE CASTILLO
MAGISTRATE JUDGE COX
EDA

July 21, 2008

Marilyn Duncan
Regional Vice President
One Westbrook Corporate Center Suite 1000
Westchester, IL 60154

Dear Ms. Duncan,

Asta Care Center of Elgin "The Owner" has a current, active, contract with National Medical Care, Inc. d/b/a Neomedica Loop/East Delaware "The Company", d/b/a/ Fresenius ("FMC").

When we met on July 8, 2008 the outcome of our meeting was that we agreed that you would in-service our staff, over the next month, and work on ways to increase our internal communication so as to resolve any issues that have arisen.

The "Company" right under section 9 of the SNF/LTCF dialysis service agreement is to terminate our agreement effective 30 days from the receipt of notice which was received by me at 9:33 am on July 21st, 2008. It is not your right to remove dialysis equipment prior to that 30 day notice effectively shutting down our dialysis program with no notice.

We will avail all of our legal rights under this contract if you make any such attempts.

Respectfully,

David Meiselman

David Meiselman

cc:    Seth Gillman, General Counsel, Asta Care Center of Elgin (via certified mail)
       Julie Hawkins, Assistant General Counsel, Fresenius Medical Services

134 North Mclean Boulevard Elgin, Illinois 60123  Tel:847-742-8822  Fax:847-742-6629
www.astacare.com



Joint Commission
an Accreditation of Healthcare Organizations

EXHIBIT
3



# Fresenius Medical Care

*(781) 699-9714 – Facsimile - Law Department*
*Writer's Extension -9654*

July 22, 2008

**Via Facsimile and Overnight Mail**

David Meiselman, Administrator
Asta Care of Elgin
134 North McLean Boulevard
Elgin, IL 60123

Dear Mr. Meiselman,

I am with the litigation department at Fresenius Medical Care North America. This matter has been referred to me and I am responding to your letter to Regional Vice President, Marilyn Duncan dated July 21, 2008. It is my understanding that you received National Medical Care, Inc.'s written notice suspending Asta Care's participation in FMC's home training and support program, and terminating the SNF/LTCF Dialysis Services Agreement between National Medical Care, Inc. ('NMC") and Asta Care of Elgin ("Asta Care") on July 21, 2008. Your assertion, "it is not your right to remove dialysis equipment prior to that 30 day notice effectively shutting down our dialysis program with no notice" is incorrect. Please note the following:

Section 2 of the Agreement provides that "the Company and the ESRD Dialysis Unit reserve the right to immediately discontinue the provision of dialysis services to any resident of the Nursing Facility who, in their sole discretion, does not observe the established responsibilities, policies and procedures of the ESRD Dialysis Unit." NMC has made such a determination as to all of the ESRD residents at Asta Care, for the reasons described in Ms. Duncan's letter. As you are aware, ESRD residents at Asta Care perform home dialysis with the significant involvement and assistance of caregivers employed by Asta Care. It remains NMC's position that Asta Care staff providing caregiver services to the home dialysis patients are not observing the established responsibilities, policies and procedures of the ESRD Dialysis Unit when assisting residents in the provision of dialysis services. NMC is, therefore, entitled to immediately discontinue the provision of dialysis services to residents of Asta Care.

Further, Asta Care is not a licensed ESRD facility and is prohibited from providing dialysis services without the involvement of a licensed ESRD dialysis provider. Accordingly, under no circumstances is Asta Care permitted to utilize any dialysis equipment or supplies owned by NMC to perform dialysis services. In the event that Asta Care continues utilizing NMC's property to perform dialysis services, it will be held fully accountable for all damages and costs associated with same.

**Fresenius Medical Care North America**
Corporate Headquarters: 920 Winter Street   Waltham, MA 02451   781-699-9000

**EXHIBIT**

4

As you know, NMC has made arrangement for Asta Care's ESRD residents to receive their dialysis treatments at outpatient facilities beginning July 23, 2008. In order to ensure that the residents receive these treatments, it is imperative that the outpatient facilities receive current medical records for these residents, including history and physicals, EKG and X rays, and the three most recent treatment sheets, in advance of their dialysis treatments tomorrow. Please immediately provide these critical records to the facilities. I also request that you contact me immediately with a specific date and time when NMC may enter Asta Care's premises to remove its equipment, supplies, and complete medical records.

Very truly yours,

Alina Gorodetsky, Esq.
Corporate Counsel

Cc: Seth Gillman, General Counsel, Asta Care Center of Elgin (via overnight mail)