**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATIONAL MEDICAL CARE, INC. d/b/a NEOMEDICA LOOP/EAST DELAWARE, )<br><br>Plaintiff, )<br><br>v. )<br><br>ASTA CARE CENTER OF ELGIN, LLC. )<br><br>Defendant. ) | FILED: JULY 23, 2008<br>08CV4190<br>JUDGE CASTILLO<br>MAGISTRATE JUDGE COX<br>EDA |

**MOTION FOR EMERGENCY INJUNCTIVE RELIEF**

Plaintiff National Medical Care, Inc. d/b/a Neomedica Loop/East Delaware ("NMC"),

through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 65, respectfully

requests this Court to enter a temporary restraining order and preliminary injunction against the

Defendant, Asta Care Center of Elgin, LLC ("Asta"), prohibiting Asta from using in any manner

any equipment owned, leased, or provided by NMC in performing dialysis services to any and all

residents with End Stage Renal Disease ("ESRD") in violation of the parties' Agreement and

State and Federal laws and regulations.  In support of its motion, NMC states as follows:

**FACTS**

The following facts are established by the affidavit of Catherine Columbo, attached as

Ex. A hereto.

NMC is in the business of providing, among other things, home hemodialysis training

and support to patients with End Stage Renal Disease ("ESRD").  Asta is a long term care

("LTC") facility.  In September 2003,  NMC and Asta entered into an SNF/LTCF Dialysis

Services Agreement ("Agreement") whereby NMC agreed to train Asta staff to perform home

1

dialysis for ESRD residents at Asta.  Asta performed home dialysis using NMC's equipment and supplies.  Asta retained NMC's patient medical records for ESRD residents at Asta.  Dialysis services were billed using NMC's provider number.

During regulatory audits and education assessments in May 2008, NMC became aware of multiple serious issues that raise quality of care concerns, including gaps in Water Quality Documentation, Medication Management, and Infection Control Practices. (A detailed list of problems noted by NMC is set forth in the Columbo Affidavit, Ex. A, ¶ 16.)   NMC attempted to work with Asta to address these issues, including through conducting multiple re-education sessions and re-training the nursing home staff.  Despite these efforts, NMC's quality of care concerns were not adequately addressed, and Asta staff continued to fail to comply with NMC's policies and federal regulations governing home dialysis care.

NMC had the right to immediately discontinue the provision of dialysis services to any resident of the Nursing Facility who, in their sole discretion, does not observe the established responsibilities, policies and procedures of the ESRD Dialysis Unit."  *See* Agreement, § 2.  On July 18, 2008, NMC notified Asta via letter that it was suspending Asta's participation in NMC's home training and support program and providing notice that the Agreement would be terminated in 30 days from Asta's receipt of the letter.  *See* July 18, 2008 Letter, attached to the Complaint as Exhibit 2.  NMC explained that it had arranged for the ESRD patients residing at Asta to receive their dialysis treatments at an outpatient facility as of July 23, 2008.  *Id*.  NMC notified Asta of its intention to remove the dialysis equipment from Asta's premises on July 21, 2008.  *Id*.

On July 21, 2008, Asta confirmed receipt of the July 18, 2008 Letter.  *See* July 21, 2008 Letter, attached to the Complaint as Exhibit 3.  Asta stated its belief that NMC did not have the

2

right to remove dialysis equipment prior to the end of the 30 day notice period and that NMC was effectively shutting down its dialysis program with no notice. *Id*.

NMC responded in a letter dated July 22, 2003 sent to Asta via facsimile in which NMC pointed out that Asta is not a licensed ESRD facility and is prohibited from providing dialysis services without the involvement of a licensed ESRD dialysis provider. *Id*. NMC confirmed that, pursuant to Section 2 of the Agreement, it had the right to immediately discontinue the provision of dialysis services to any resident of the Nursing Facility who, in NMC's sole discretion, does not observe the established responsibilities, policies, and procedures of the ESRD Dialysis Unit and that it was invoking that right as to all Asta residents. *Id*. NMC informed Asta that under no circumstances was Asta permitted to utilize any dialysis equipment or supplies owned by NMC to perform dialysis services. *Id*. Finally, NMC requested that Asta contact it immediately to arrange for the transfer of patient medical records to the outpatient facilities where NMC had arranged for Asta's ESRD residents to receive dialysis services beginning July 23, 2008. *Id*.

Rather than comply with its obligations under the Agreement to cease providing home dialysis services to ESRD residents, on July 23, 2008, Asta provided dialysis services to ESRD residents using NMC equipment despite NMC's suspension of the Agreement and NMC's clear directive to the contrary.

The next dialysis treatment is scheduled on Friday, July 25, 2008. Asta's continuing provision of dialysis services to ESRD patients despite the suspension of the Agreement and in contravention of federal regulations poses a grave danger to the health and safety of the patients. Accordingly, NMC seeks to immediately enjoin Asta from performing additional dialysis treatment. NMC also seeks the immediate return of all equipment or supplies owned, leased, or

provided by NMC.  Returning the equipment immediately is the only way to ensure that NMC's equipment is not misused by Asta, an unlicensed facility, in violation of law and to the detriment of both patients and NMC.

NMC would suffer immediate and irreparable harm because the continued provision of unlicensed ESRD dialysis services by Asta using NMC equipment subjects NMC to potential civil liability to patients, damage to NMC's reputation in the industry, and the resultant loss of customers.  Moreover, because NMC is required by the CMS to monitor all aspects of home dialysis services provided to residents at a LTC facility, continued action by Asta subjects NMC to potential termination of its Medicaid approval as an ESRD facility.

## ARGUMENT

### I.    Legal Standards

A party seeking a Temporary Restraining Order must demonstrate:  "(1) some likelihood of success on the merits; (2) no adequate remedy of law exists; (3) plaintiff will suffer irreparable injury if the TRO is not issued; and (4) the irreparable harm plaintiff will suffer if the TRO is not issued outweighs any harm defendant will suffer if the TRO is granted."  *Victor Products, Inc. v. Custom Accessories, Inc.*, 1994 WL 130769 (N.D. Ill. 1994), citing *National Peoples Action v. Village of Wilmette*, 914 F.2d 1008, 1010-11 (7th Cir. 1990).

As the Seventh Circuit has made clear, a sufficient likelihood of success exists "if the party seeking injunctive relief shows that it has a 'better than negligible' chance of succeeding on the merits."  *Meridian Mutual Insurance Company v. Meridian Insurance Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997).  "The more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harm need weigh toward its side. . . ."  *Abbott Laboratories v. Mead Johnson and Company*, 971 F.2d 6, 11 (7th Cir. 1992) (citations omitted).

4

## II.    Likelihood of Success on the Merits

The facts established in the Columbo Affidavit demonstrate that NMC is likely to succeed on the merits of its claim for breach of contract.  The plain language of the Agreement permits to NMC and the ESRD Dialysis Unit "to immediately discontinue the provision of dialysis services to any resident of the Nursing Facility who, *in their sole discretion*, does not observe the established responsibilities, policies and procedures of the ESRD Dialysis Unit." *See* Agreement, § 2 (emphasis added).

Separately, the Agreement permits either party to terminate it, at any time, with or without cause, upon thirty (30) days written notice to the non-terminating party.  *See* Agreement, § 9.

On July 18, 2008, NMC notified Asta that it was suspending Asta's participation in NMC's home training and support program and of its intention to remove the dialysis equipment from Asta's premises on July 21, 2008.  *See* July 18, 2008 Letter.  NMC further stated that the letter shall serve as written notice that NMC was exercising its rights pursuant to Section 9 of the Agreement to terminate the Agreement effective 30 days from Asta's receipt of the notice.  *Id*. NMC's letter of July 22, 2008 confirmed that it was exercising its rights, pursuant to Section 2 of the Agreement, to immediately discontinue the provision of dialysis services to all residents at Asta, because in NMC's sole discretion, the established responsibilities, policies, and procedures of the ESRD Dialysis Unit were not being followed.  Despite NMC's suspension, Asta provided home dialysis services to its ESRD residents on July 23, 2008.  Asta has further refused to permit NMC to retrieve its equipment, supplies, and patient files from the facility.  Accordingly, NMC is more than likely to succeed on the merits of its breach of contract claim.

### III.    Irreparable Harm and Lack of Adequate Legal Remedy

NMC has an obligation to ensure proper treatment and care of all of its patients, including patients receiving home dialysis at LTC facilities.  Asta has already demonstrated that it will continue to provide dialysis services to residents, despite the fact that it has no authority to do so, using NMC's equipment and supplies.  Asta's continued provision of unlicensed ESRD dialysis services subjects patients to an unreasonable and unnecessary risk of immediate harm – even death.  It also exposes NMC to potential civil liability to patients, damage to NMC's reputation in the industry, and the resultant loss of customers.  Prohibiting Asta from using NMC's equipment and supplies is the only way to ensure both safety to patients and protection for NMC from harm.

The required showings for irreparable harm and no adequate remedy at law-tend to merge.  See *Roland Machinery Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 387 (7th Cir. 1984).  "The question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." *Id.*  An injury is "irreparable" if the injured party cannot be adequately compensated in damages or when damages cannot be measured by any pecuniary standard.  *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1120 (7th Cir. 1997); see also *Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ( "showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages").  Similarly, the loss of customers and sales can constitute irreparable harm.  *Mintel Intern. Group, Ltd. v. Neergheen*, 2008 WL 2782818 (N.D. Ill. 2008).

**IV.     Balance of Harms**

In reviewing a motion for a Temporary Restraining Order, the Court needs to balance the harm the plaintiff will suffer if the TRO is not issued against any harm the defendant would suffer if the TRO is granted. The balance of harm is decidedly in favor of the plaintiff, NMC. If a TRO is not granted, then Asta will continue to provide home dialysis services to patients without the supervision of a Medicare-approved ESRD facility, subjecting patients to immediate risk of severe harm. Additionally, the continued provision of unlicensed ESRD dialysis services by Asta using NMC's equipment and supplies subjects NMC to potential civil liability to patients, damage to NMC's reputation in the industry, and the resultant loss of customers.

In comparison, the harm to be suffered by Asta if a TRO is granted in favor of NMC is small. Asta will simply be prevented from continuing to violate federal law and CMS requirements. The patients at Asta have a variety of options to ensure they receive dialysis services, as NMC has made alternative arrangements to see to it that they receive their dialysis elsewhere.

Clearly, the balancing of the private harms, and the public interest, favor a temporary restraining order.

C048860/0176598/79981.3

THEREFORE, NMC prays that the Court:

A.      Enter a Temporary Restraining Order;

        (1)      Prohibiting Asta from using in any manner any equipment or supplies owned, leased, or provided by NMC;

        (2)      Requiring Asta to return all equipment and supplies owned, leased, or provided by NMC immediately; and

        (3)      Prohibiting Asta, its employees, agents, and affiliates from providing ESRD dialysis services using NMC's equipment or otherwise violating the Agreement and/or State and Federal laws and regulations.

B.      Set a schedule for a hearing on a preliminary injunction.

C.      Provide such other relief the Court deems just and proper.

Dated: July 23, 2008

                                Respectfully submitted,


                                _____/s/ Jena Valdetero_____
                                One of the Attorneys for NATIONAL MEDICAL
                                CARE, INC. d/b/a NEOMEDICA LOOP/EAST
                                DELAWARE

Brian A. Sher, #6196469
Anthony L. Lehr, #6187689
R. Bruce Duffield, #0686360
Jena M. Valdetero, #6290948
BRYAN CAVE LLP
161 North Clark Street, Suite 4300
Chicago, Illinois  60601
Telephone:  (312) 602-5000
Facsimile:  (312) 602-5050

8