UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL MEDICAL CARE, INC. d/b/a NEOMEDICA LOOP/EAST DELAWARE, <br><br> Plaintiff, <br><br> v. <br><br> ASTA CARE CENTER OF ELGIN, LLC. <br><br> Defendant. | FILED: JULY 23, 2008 <br> 08CV4190 <br> JUDGE CASTILLO <br> MAGISTRATE JUDGE COX <br> EDA |

## DECLARATION OF CATHERINE COLOMBO

1. My name is Catherine Colombo.

2. I am over 18 years old, and the matters stated in this Declaration are based on my personal knowledge of the facts and on my review of business records and other records reasonably relied on by professionals in my field.

3. I am an Area Manager with Fresenius Medical Care North America ("FMCNA"). FMCNA is a d/b/a for Fresenius Medical Care Holdings, Inc ("FMCH"). National Medical Care, Inc. ("NMC") is a subsidiary of FMCH. Asta Care Center of Elgin, LLC ("Asta") is located in my assigned region. I am a Registered Nurse and a Certified Nephrology Nurse.

4. NMC provides dialysis treatment in treatment centers and also provides training and support to home dialysis patients with End Stage Renal Disease ("ESRD").

5. Asta is a Long Term Care facility ("LTC").

6. I am familiar with treatment protocols for dialysis patients with ESRD, and with State and Federal regulations and guidelines for dialysis. These include regulations and guidelines published by the U.S. Department of Health and Human Services Centers for

79986.1                                    1

EXHIBIT A

Medicare and Medicaid Services ("CMS"). These guidelines apply to all Medicare and Medicaid patients and are considered authoritative in the industry.

7. CMS permits patients to perform home dialysis with little or no professional assistance if the ESRD patient has been trained to perform self-dialysis. Because the LTC facility is considered as the patient's home, CMS permits the provision of home dialysis training and support in the LTC facility setting. CMS permits the LTC facility to provide home dialysis to patients if they coordinate with an ESRD facility to provide the training and support necessary.

8. NMC is an ESRD facility.

9. Asta is not independently qualified to provide ERSD dialysis services.

10. CMS holds both the ESRD facility and the LTC facility accountable for the coordination and quality of dialysis services delivered to LTC facility residents. CMS requires that the Medicare-approved ESRD facility be responsible for all aspects of the home dialysis care performed in the LTC facility.

11. CMS obligates the approved ESRD facility to monitor the dialysis care of LTC facility residents and investigate the care provided. For example, the ESRD facility must ensure compliance with federal regulations in the areas of Infection Control, Water Treatment, Equipment Installation and Maintenance, Staffing, Staff Training, and Patient Monitoring During Treatment.

12. Under 42 CFR § 405.2136(b)-(e), CMS requires that the ESRD facility and the LTC facility enter into a written coordination agreement to coordinate the provision of such specific services to maximize patient safety and program efficiency.

13. In September 2003, Asta and NMC entered into an SNF/LTCF Dialysis Services Agreement ("Agreement") in compliance with federal regulations. *See* Agreement, Exhibit 1 to the Complaint.

14. Under this Agreement, NMC agreed to provide an educational training program to train Asta staff to perform dialysis for ESRD patients at Asta. *Id.* The Agreement further provided that services were to be provided by qualified clinical personnel. *Id.* NMC's clinical personnel were not responsible for providing any medical treatment or procedures to patients at Asta. *Id.* Until July 21, 2008, dialysis services provided to ESRD residents at Asta were billed using NMC's provider number.

15. The Agreement states "[n]otwithstanding anything herein to the contrary, [NMC] and the ESRD Dialysis Unit reserve the right to immediately discontinue the provision of dialysis services to any resident of the Nursing Facility who, in their sole discretion, does not observe the established responsibilities, policies and procedures of the ESRD Dialysis Unit." *See* Agreement, § 2.

16. During regulatory audits and education assessments in May 2008, NMC noted multiple serious issues that raise quality of care concerns, including:

<u>WATER SAFETY (TECHNICAL CLINICAL)</u>

- Breaks in procedure for ensuring patient safety through appropriate water testing.
  - No documentation of RO testing on day of audit. Documentation on day prior when facility was closed. Staff needs to ensure documentation is complete under the proper date.
  - Second signature applied for Chloramine testing when employee didn't see original testing. Appears to be a routine practice.
  - Dates missing TDS daily standardization and weekly calibration.
  - Conductivity meter calibration lacking documentation on logs. Discrepancies between dates water testing and log calibrations were complete. May have been documented on incorrect date when facility was closed. Staff needs to ensure documentation is complete under the proper date.
  - Greater than 7 days between weekly machine bleach disinfection documentation to prevent bacterial growth in dialysis machine.

- o Weekly bicarbonate jug and wand disinfection documented twice in April and only once in May. Procedure to prevent bacterial contamination of bicarbonate jugs and wands.
- o Several of the items listed above were identified during May 5th Educational Needs Assessment. Education and training provided at that time by Carol Wolter-Morrisroe RN. Continued gaps noted after training.
- Lab refrigerator temperature 30 degrees at time of audit. Noted on May 28th, last temperature check completed May 11th.
- Greater than 14 days between diasafe filter integrity tests.

## MEDICATIONS AND EMERGENCY EQUIPMENT

- Medication discrepancies. Ferrlicit noted attached to blood circuit. No documentation of administration on treatment sheet. Preparation time labeled on syringe is after time documented as administered. Dosage labeled on syringe didn't match ordered dose.
- Monthly medication expiration checks in place for April and May. Missing January, February and March.
- Discharged patient's Epogen remains in refrigerator. Procrit noted in refrigerator. Actual heparin dosage administered is blank on treatment sheet.

## CLINICAL AREA OBSERVATION

- Tight spacing in both treatment areas. Door held open with tourniquet tied to chair. Cluttered and crowed at nurse's station.
- Untrained RN monitoring patients during treatment for greater than five minutes and resetting alarms. Also noted in medical records, documented safety checks for periods of up to two hours.
- Small amount of blood splatter noted on dialysis machines in storage area.
- Patient noted dialyzing on machine assigned to another patient.
- Epogen of discharged patient remains in refrigerator.
- Shortened prime and fresh fill noted during set up.
- Patient noted with access covered during treatment.
- No noted report to nursing home staff on return from treatment.
- Noted lack of communication between staff as part of routine care. Example water testing and second signature. Patient monitoring.

## HOUSEKEEPING/INFECTION CONTROL

- Breaks in hand washing on glove removal, entering and leaving treatment area, between patients and on PPE removal.
- Glove removal without hand washing after. Contaminating glove box. Betadine bottle from one patient station to another leading to cross contamination.

- Broken hand sanitizer at entry into treatment area. Noted broken hand sanitizers on dialysis machines.
- RN noted administering heparin without PPE.
- Bloody transducer noted during treatment. Issue was not corrected.
- Unsecured sharps containers on floor.
- Partially full saline bags and unopened syringes with needles in Biohazardous waste container.
- Bleach posting missing at time of audit. Observed RN preparing bleach without using proper ratio. Staff able to verbalize proper procedure.

### MEDICAL RECORDS

- No monthly physician progress notes.
- Treatment sheets noted with missing pre and post temperature, vitals within 15 minutes of take off and post evaluation documentation. Gaps in dialyzer verification documentation.
- Epogen ordered on several dates. No documentation of administration.
- No current orders in medical record. Per treatment sheet, noted changes in treatment orders without supporting order in main medical record.
- Orders lack ICD-9 coding and RN signature.

17. NMC undertook substantial efforts to train and retrain Asta staff and to otherwise assist Asta to try to improve the quality of Asta's services.

18. Despite NMC's efforts, the quality concerns were not adequately addressed by Asta, and Asta staff members providing caregiver services to the home dialysis patients continually failed to comply with NMC's policies and federal regulations governing home dialysis care.

19. On July 8, 2008, I attended a meeting with David Meiselman, the Administrator of Asta, to discuss NMC's grave concerns about the quality of care received by NMC's home dialysis patients residing at Asta.

20. NMC concluded that Asta had failed to take NMC's concerns seriously and had failed to act in a prompt and appropriate manner to resolve these issues.

21. On July 18, 2008, NMC notified Asta that it was suspending Asta's participation in NMC's home training and support program. *See* July 18, 2008 Letter, Exhibit 2 to the Complaint. NMC explained that it had arranged for the ESRD patients residing at Asta to receive their dialysis treatments at an outpatient facility as of July 23, 2008. *Id.* NMC notified Asta of its intention to remove the dialysis equipment from Asta's premises on July 21, 2008. *Id.* The price of the 13 dialysis machines in Asta's possession is in excess of $75,000. *Id.* NMC further stated that the suspension must remain in place until NMC receives a clear indication that Asta has taken steps to address and fully resolve NMC's concerns and ensure quality dialysis care in compliance with federal standards. *Id.*

22. In the July 18, 2008 Letter, NMC further stated that the letter shall serve as written notice that NMC was exercising its rights pursuant to Section 9 of the Agreement to terminate the Agreement effective 30 days from Asta's receipt of the notice. *Id.*

23. Asta responded via letter dated July 21, 2008, and confirmed receipt of the July 18, 2008 Letter. *See* July 18, 2008 Letter, Exhibit 3 to the Complaint. Asta stated its belief that NMC did not have the right to remove dialysis equipment prior to the end of the 30 day notice period and that NMC was effectively shutting down Asta's dialysis program with no notice. *Id.*

24. On July 22, 2008, NMC responded by letter to Asta sent via facsimile, and confirmed that, pursuant to Section 2 of the Agreement, it had the right to immediately discontinue the provision of dialysis services to any resident of the Nursing Facility who, in NMC's sole discretion, does not observe the established responsibilities, policies, and procedures of the ESRD Dialysis Unit. *See* July 22, 2008 Letter, Exhibit 4 to the Complaint. NMC communicated its position that Asta staff providing caregiver services to ESRD patients were not observing the established responsibilities, policies, and procedures of the ESRD Dialysis Unit

when assisting residents in the provision of dialysis services, entitling NMC to immediately discontinue the provision of dialysis services to residents at Asta. *Id.*

25. Asta is not a licensed ESRD facility and is prohibited from providing dialysis services without the involvement of a licensed ESRD dialysis provider. NMC informed Asta that under no circumstances was Asta permitted to utilize any dialysis equipment or supplies owned or supplied by NMC to perform dialysis services. *Id.*

26. Finally, NMC requested that Asta contact it immediately to arrange for the transfer of patient medical records to the outpatient facilities where NMC had arranged for Asta's ESRD residents to receive dialysis services beginning July 23, 2008. *Id.*

27. Asta did not respond to the July 23, 2008 letter. On July 23, 2008, NMC learned that Asta had provided dialysis services to ESRD residents despite NMC's suspension of the Agreement and NMC's clear directive to the contrary.

28. The next dialysis treatments are scheduled on Friday, July 25, 2008. NMC has determined that dialysis treatments can be provided at facilities located in Hoffman Estates, Illinois and Elk Grove, Illinois beginning immediately to ESRD patients who reside at Asta.

29. Asta's continuing provision of dialysis services to ESRD patients despite the suspension of the Agreement and in contravention of federal regulations poses a grave danger to the health and safety of the patients. Specifically, the observed shortcomings subject patients to immediate risk of severe harm, including cardiac arrest and other life threatening complications up to and including death.

30. Additionally, the continued provision of unlicensed ESRD dialysis services by Asta subjects NMC to potential civil liability to patients, damage to NMC's reputation in the industry, and the resultant loss of customers.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Catherine Colombo

Date: 7/23/08